**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WORTH CAPITAL HOLDINGS 36 LLC<br>13345 SOUTHFIELDS ROAD<br>WELLINGTON, FL 33414,<br><br>                               Plaintiff,<br>v.<br><br>DAVID SHUMAN<br>260 PARK AVENUE SOUTH<br>NEW YORK, NY 10010,<br>                               Defendant. | CIVIL ACTION NO.<br>19-CV-5833<br><br><br>**COMPLAINT** |

Plaintiff, Worth Capital Holdings 36 LLC ("Plaintiff"), by and through its attorneys, Woods Oviatt Gilman, LLP, avers and alleges, as follows:

**PARTIES**

1. Plaintiff is a Delaware limited liability company with a principal place of business located at 13345 Southfields Road, Wellington, FL 33414, and Plaintiff's sole member, Charles R. Holzer, is a an adult individual who is domiciled in the State of Florida.

2. Defendant, David Shuman ("Defendant," "Shuman," or "Guarantor"), is an adult individual who resides at 260 Park Avenue South, New York, NY 10010 and is domiciled in the State of New York.

**JURISDICTION AND VENUE**

3. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C § 1332 because the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and because there is complete diversity of citizenship between (a) Plaintiff and its sole member, being citizens of the State of Florida, and (b) Defendant, a citizen of the State of New York.

-2-

4. Venue is proper in this district because the residence of the Defendant and the events set forth in this Complaint are located and/or occurred in the Southern District of New York, and in accordance with the venue provision of the parties' agreement.

5. Plaintiff is registered to do business in the State of New York.

**FACTUAL ALLEGATIONS**

6. On September 4, 2017, Declan Ganley (the "Borrower") obtained a loan in the original principal amount of $3,000,000.00 from the Plaintiff pursuant to a Loan and Call Right Agreement (the "Original Loan Agreement").

7. In connection with the Original Loan Agreement, the Borrower executed and delivered to Plaintiff a Promissory Note, dated September 4, 2017, in the principal amount of $3,000,000.000 (the "Original Note").

8. On or about November 8, 2017, the Borrower and Plaintiff executed an Amended and Restated Loan and Call Right Agreement (the "Loan Agreement") increasing the original principal amount of the loan made by Plaintiff to the Borrower to $4,500,000.00 (the "Loan").

9. On or about November 8, 2017, in connection with the Loan from Plaintiff, the Borrower also executed and delivered to Plaintiff an Amended and Restated Promissory Note (the "Note").

10. As additional security for the Loan, the Guarantor executed and delivered to Plaintiff a Credit Enhancement Letter Agreement dated November 8, 2017 (the "Guaranty").

11. Under the terms of the Guaranty, Defendant guarantied and became a surety for, absolutely, primarily, unconditionally and irrevocably, the full and prompt payment of all amounts due and owing to Plaintiff pursuant to the terms of the Loan Agreement.

12. Under the Guaranty, Defendant also agreed that his obligations as Guarantor are independent of the obligations of Borrower and of any other Person that may become liable with respect to the obligations under the Loan Agreement, and that a separate action or actions may be brought and prosecuted against Shuman, whether or not any action is brought against Borrower, any other guarantor or any other person for any obligations guaranteed under the Guaranty.

13. Pursuant to the Loan Agreement and Note, the Loan matured on February 1, 2018 (the "Maturity Date").  The Borrower failed to pay all outstanding principal and accrued and unpaid interest under the Loan Agreement by the Maturity Date.

14. On or about March 16, 2018, Plaintiff and the Borrower entered into a Modification and Extension Agreement (the "First Extension Agreement").  Pursuant to the First Extension Agreement, the Plaintiff and the Borrower agreed to extend the Maturity Date of the Loan to March 20, 2018.

15. Upon information and belief, Shuman was aware of and involved in the negotiations concerning the First Extension Agreement.

16. On or about April 18, 2018, Plaintiff and Borrower entered into a Second Modification and Extension Agreement (the "Second Extension Agreement").  Pursuant to the Second Extension Agreement, the Maturity Date was extended to May 15, 2018.

17. Upon information and belief, Shuman was aware of and involved in the negotiations concerning the Second Extension Agreement.

18. On or about June 7, 2018, Plaintiff and Borrower entered into a Third Modification and Extension Agreement (the "Third Extension Agreement" together with the First Extension Agreement and Second Extension Agreement, collectively, the "Extension

Agreements"). Pursuant to the Third Extension Agreement, the Maturity Date was extended to July 20, 2018 (the "Final Maturity Date").

19. Upon information and belief, Shuman was aware of and involved in the negotiations concerning the Third Extension Agreement.

20. The Original Loan Agreement, Loan Agreement, Original Note, Note, Guaranty, Extension Agreements, and all other documents evidencing, securing or executed in connection with the Loan are hereinafter referred to collectively as the "Loan Documents".

21. A default and/or defined event of default on the part of the Borrower and the Guarantor under the Loan Documents has occurred and is continuing as a result of their failure to pay the outstanding principal balance due under the Loan Documents on or before the Final Maturity Date (the "Maturity Default").

22. On August 20, 2018, Plaintiff sent the Borrower a Notice of Default and Acceleration (the "First Default Notice") confirming the occurrence of the Maturity Default. Further, Plaintiff accelerated all amounts due and owing under the Loan Documents.

23. On September 17, 2018, Plaintiff sent the Guarantor a Demand for Payment (the "First Guaranty Demand") notifying the Guarantor of the Maturity Default and demanding payment from the Guarantor.

24. On October 1, 2018, Plaintiff and the Borrower executed a Forbearance and Modification Agreement (the "First Forbearance Agreement"). Thereunder, Plaintiff agreed to forbear from taking action to enforce its rights under the Loan Documents until October 31, 2018, and Borrower agreed that the failure to pay all sums due thereunder on or before October 31, 2018 would constitute an event of default.

25. Upon information and belief, Shuman was aware of and involved in the negotiations concerning the First Forbearance Agreement.

26. The Borrower and Guarantor failed to pay the sums owed to Plaintiff by October 31, 2018 (the "First Forbearance Default").

27. On November 5, 2018, Plaintiff sent the Borrower a second Notice of Default and Acceleration (the "Second Default Notice") confirming the occurrence of the Maturity Default and the First Forbearance Default.

28. On November 7, 2018, Plaintiff sent a second Demand for Payment (the "Second Guaranty Demand") notifying the Guarantor of the Maturity Default and First Forbearance Default and demanding payment from the Guarantor.

29. On December 7, 2018, Plaintiff and the Borrower executed a Second Forbearance and Modification Agreement (the "Second Forbearance Agreement" and, together with the First Forbearance Agreement, the "Forbearance Agreements").  Thereunder, Plaintiff agreed to forbear from taking action to enforce its rights until January 15, 2019, and Borrower agreed that the failure to pay all sums due thereunder on or before January 15, 2019, would constitute an event of default.

30. Upon information and belief, Shuman was aware of and involved in the negotiations concerning the Second Forbearance Agreement.

31. The Borrower and Guarantor failed to pay the amounts due to Plaintiff by January 15, 2019 (the "Second Forbearance Default" and with the Maturity Default and the First Forbearance Default, collectively, the "Existing Defaults").

-6-

32. On March 6, 2019, Plaintiff sent the Borrower a third Notice of Default and Acceleration (the "Third Default Notice" and with the First Default Notice and Second Default Notice, collectively, the "Default Notices") confirming the occurrence of the Existing Defaults.

33. On March 7, 2019, Plaintiff sent a third Demand for Payment to Defendant (the "Third Guaranty Demand" and with the First Guaranty Demand and Second Guaranty Demand, collectively, the "Guaranty Demands") notifying the Guarantor of the Existing Defaults and demanding payment from the Guarantor.

34. Despite the multiple Default Notices and Guaranty Demands, as of the date hereof, neither the Borrower nor the Guarantor have resolved the Existing Defaults.

35. Neither the Borrower nor the Guarantor have repaid the Loan.

36. Neither the Borrower nor the Guarantor have repaid the amount owing to Plaintiff under the Loan Documents, the Extension Agreements or the Forbearance Agreements.

37. Despite demand, Guarantor has refused, without cause or justification, to make any payment under the Guaranty.

### FIRST CAUSE OF ACTION
**(Breach of Guaranty)**

38. To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 35 as if fully set forth herein.

39. The Guaranty is a valid, binding and enforceable agreement executed by Shuman.

40. Pursuant to the Guaranty, the Guarantor is obligated to pay Plaintiff all amounts due and owing under the Loan Agreement.

41. Under the terms of the Loan Agreement, the amounts due and owing to Plaintiff include, among other things, Plaintiff's reasonable attorneys' fees and expenses.

42.     Plaintiff has performed all of its obligations, if any, under the Guaranty, and any conditions precedent to Shuman's performance of the Guaranty have occurred.

43.     Defendant has breached the Guaranty by failing to pay to Plaintiff the amounts required under the Guaranty.

44.     Guarantor is in default and/or breach of the Guaranty beyond any applicable notice or cure period.

45.     Plaintiff has suffered damages as a result of Defendant's breach of the Guaranty.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Defendant, David Shuman, as follows:

A.      Awarding Plaintiff money damages for Defendant's breach of the Guaranty, in the amount of to be determined at the time of trial, together with interest;

B.      Awarding Plaintiff its reasonable attorney's fees, expenses and costs incurred by Plaintiff before and after the filing of this Complaint, to the fullest extent permitted under the law and, as authorized under the Guaranty and Loan Agreement; and

C.      Such other and further relief as the Court deems just and proper.

-8-

Dated: June 21, 2019
      Rochester, New York

WOODS OVIATT GILMAN LLP

By: /s/ *Brian Capitummino*
Brian J. Capitummino, Esq.
1900 Bausch & Lomb Place
Rochester, New York 14604
(585) 987-2800
*Attorneys for Plaintiff*

{7400848:3 }